UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Micheal J. Parish

**RECEIVED**

MAR 2 9 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

Dr. Jamie Chess,
Donald Ehloe,
Michael Gorman,
Robert Armour, and
John Varga, all are sued
in their individual and official Capacity.

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

Case No: 17-50097
(To be supplied by the Clerk of this Court)

**CHECK ONE ONLY:**     **AMENDED COMPLAINT**

✔ _____ COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
U.S. Code (state, county, or municipal defendants)

_____ COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code (federal defendants)

_____ OTHER (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I. **Plaintiff(s):**

A. Name: _Micheal J. Parish_

B. List all aliases: _none_

C. Prisoner identification number: _K84246_

D. Place of present confinement: _Dixon C.C. / STC_

E. Address: _2600 N. Brinton, Dixon, IL 61021_

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A. Defendant: _Dr. Jamie Chess_

Title: _Psychologist Administrator_

Place of Employment: _Dixon C.C_

B. Defendant: _Lieutenant Robert Armour_

Title: _Correctional Lieutinent 5 7-to-3 shift commander_

Place of Employment: _formerly Dixon C.C (retired)_

C. Defendant: _Michael Gorman_

Title: _Superintendent of STC_

Place of Employment: _Dixon C.C._

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Revised 9/2007

II  Defendant(s):

D. Defendant: Donald Enloe
Title: formerly the Warden at Dixon C.C.
Place of Employment: Dixon C.C.

E. Defendant: John Varga
Title: Current Warden Chief Administrative
Officer
Place of Employment: Dixon C.C.

III. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: _Parish et. al., V. Sheriff et. al., # 07 CV 4369_

B. Approximate date of filing lawsuit: _June 2007, perhaps ?_

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _My Attorney's filed this suit on my behilf back in 2007 and it has now become a class action. I do not know any of the other plaintiffs' names._

D. List all defendants: _Sheriff of Cook County and Cook County_

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _United States District Court, Northern District of Illinois, Eastern Division_

F. Name of judge to whom case was assigned: _Judge Lee_

G. Basic claim made: _deliberate indifference/denial of medication_

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _Still pending_

I. Approximate date of disposition: _____

IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.

Revised 9/2007

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: _Micheal J. Parish v. State of Illinois and the ~~Department~~ Illinois Dept of Corr #17 CC 1667_

B. Approximate date of filing lawsuit: _Jan 17, 2017_

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _Micheal J. Parish_

D. List all defendants: _State of Illinois and the Illinois Dep't of Corrections_

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _Court of Claims of the State of Illinois_

F. Name of judge to whom case was assigned: _It is a new case, I don't think I have a judge yet._

G. Basic claim made: _Medical malpractice_

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _It's still pending_

I. Approximate date of disposition: _____

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

III. 1
   A. Name of Case: Parish v. Sheriff et.al., I don't recall the docket number
   B. Approximate date of filing lawsuit: Some time in 2011, I don't recall, Maybe 2010.
   C. List all plaintiff: I was the only one
   D. List all defendants: Sheriff of Cook County and Cook County.
   E. Court in which lawsuit was filed: United States District Court, Northern District of Illinois, Eastern Division.
   F. Name of Judge: Don't remember.
   G. Basic Claim made: deliberate indifference I fell from the bunk bed.
   H. Disposition: Settled.
   I. Approximate date of disposition: I don't remember, maybe 2011 or 2012. I had an attorney who handled the case. Kenneth Flaxman was the attorney on record.

III.

A. Name of Case: Parish v. Sheriff et. al., I don't recall the docket number.

B. Approximate date of filing lawsuit: Some time in 2011, I don't recall, Maybe 2010.

C. List all plaintiff: I was the only one.

D. List all defendants: Sheriff of Cook County and Cook County

E. Court in which lawsuit was filed United States District Court, Northern District of Illinois, Eastern Division.

F. Name of Judge: Don't remember.

G. Basic claim made: Discrimination and deliberate indifference to mental health needs.

H. Disposition: Settled

I. Approximate date of disposition: I don't remember, maybe 2011 or 2012. I had an Attorney who handled the case. Kenneth Flaxman

III.

A. Name of Case: Parish v. ~~City of Chicago~~ City of Chicago
I don't remember the case # or defendants
I had an attorney

B. Approximate date of filing lawsuit:
May or June of 2008

C. List all plaintiff: I was the only one.

D. List all defendants: Don't remember
their names. They were Chicago police officers
and the City of Chicago.

E. Court in which lawsuit was filed: United
States District Court, Northern District of Illinois,
Eastern Division.

F. Name of Judge: Don't remember

G. Basic claim Made: Malicious prosecution

H. Disposition: Dismissed (wrong court)

I Approximate date of disposition: I
Can't recall. I think that it was dismissed
in 2008 or 2009. Kenneth Flaxman was my
attorney.

III.

A. Name of Case: _Parish v. Mendoza et.al.,_ I don't recall the case number

B. Approximate date of filing lawsuit: August of 2006?

C. List all plaintiffs: _I was the only one_

D. List all defendants: _% Mendoza and % Richard_

E. Court in which lawsuit was filed: _United States District Court, Northern District of Illinois, Eastern Division_

F. Name of Judge: Don't remember

G. Basic claim made: _Excessive force_

H. Disposition: _I dismissed the complaint_

I. Approximate date of disposition: _October_ ~~2000~~ 2006

III.

A. Name of case _Parish v. Sheriff et.al.,_
I don't recall the case number.

B. Approximate date of filling lawsuit _May_
_of 2010._

C. List all plaintiffs _I was the only one._
D. List all defendants _Sheriff of Cook County_
and Cook County.

E. Court in which lawsuit was filed _United_
_States District Court Northern District of Illinois_
_Eastern Division._

F. Name of Judge _Don't remember_
G. Basic claim made _1st Amendment/religion violation_
H. Disposition _Settled_
I. Approxidate date of disposition _November_
of ~~Decade~~ 2010.

III.

A. Name of Case: Parish v. c/o Parnell ? et. al.
I don't recall the case number

B. Approximate date of filing lawsuit: June
2008 ? can't recall.

C. List all plaintiffs: Just me

D. List all defendants: c/o Parnell and two
unknown nurses

E. Court in which lawsuit was filed: ___
United States District Court, Northern District of
Illinois, Eastern Division.

F. Name of Judge: Don't remember

G. Basic claim made: excessive force inadequate
medical treatment

H. Disposition: I dismissed the case

I Approximate date of disposition: 2020
Sometime in 2008, can't recall

IV.     **Statement of Claim:**

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

## Introduction

This is a civil rights action filed by Micheal J. Parish, a State prisoner, for damages and injunctive relief under 42 U.S.C. § 1983, alleging inadequate mental health treatment, discrimination, and retaliation in violation of the Eight Amendment to the United States Constitution and ADA and Rehabilitation Act, including First Amendment violations.

## Parties

1. The plaintiff, Micheal J. Parish, was and still is, incarcerated at Dixon Correctional Center Specialized Treatment Center for residential treatment due to a seriously Mentally ill designation.

2. Defendant Dr. Jamie Chess is the Psychologist Administrator and is responsible for the administration of mental health services for all inmates at Dixon C.C. and STC, she

4

is sued in her individual and official capacity.

3. Defendant Donald Enloe (formerly) the Warden and Chief Administrative Officer of the Dixon C.C. and was responsible for the entire operation of the institution. He is sued in his individual and official capacity.

4. Defendant Michael Gorman is the Superintendent of the special Treatment Center (STC) and is in charge of the entire operation of this unit. He is sued in his individual and official capacity.

5. Defendant Robert Armour (formerly) a Lieutenant employed at Dixon C.C. and was the 7-to-3 shift commander/supervisor for the STC unit. He is sued in his individual and official capacity.

6. Defendant John Varga is the Warden and Chief Administrative Officer of Dixon C.C. and is responsible for the entire operation of the institution. He is sued in his individual and official capacity.

7. All the defendants have acted, and continue to act, under color of law at all times

5

Revised 9/2007

relevant to this complaint.

Facts

8. On December 22, 2015, the plaintiff was transferred to Dixon C.C. Specialized Treatment Center from Danville C.C. to be admitted for residential treatment.

9. Plaintiff was referred for transfer due to interpersonal deficits, chronic self injury, severe anxiety, and depression. He spent a total of 21 days on suicide watch prior to transfer to Dixon STC.

10. On December 28, 2015, plaintiff wrote a letter to defendant Chess outlining his mental health history, his history as a chronic cutter (self mutilator) and his fear and anxiety associated with being in double-cell situation.

11. On December 30, 2015, plaintiff wrote a grievance describing his diagnosis, his fear and anxiety, suicidal and homocidal ideations, and self injury. Plaintiff explained that his severe anxiety associated with double-cell situation stem from being sexually assaulted by two former cell mates.

12. On December 31, 2015, plaintiff spoke
with a psychiatrist by the name of Dr.
Marquaz. Plaintiff informed Dr. Marquez of
his traumatic experiences which in-
volved the plaintiff being sexually assaulted
by cellmates, once in 2002 in Pinckneyville C.C.
and the second in 2008 while in County
lock up. Plaintiff told Dr. Marquez that he
will kill the next person who trys to assault
him.

13. Dr. Marquez told plaintiff that he
would be recommending him for single cell
designation due to the traumatic experiences
from the two prison sexual assaults, and his
inability to cope with his mental health
disorders while in double-cell environments.

14. Dr. Marquez further told plaintiff
that Dixon Security Staff doesn't like to
honor his recommendations for single-cell
placement. He also informed the plaintiff
that he might have to go on crisis watch
and act out to get Security Staff and Dr.
Chess to honor the single cell status.

15. On January 18, 2016, Dr. Marquez
wrote a recommendation to be linked to
plaintiff's treatment plan stating, "at this

he probably cannot [be] celled with other inmates due to trauma and interpersonal deficits."

16. On January 19, 2016, plaintiff received a response from his December 30, 2015 grievance stating, "Single bunk status is ultimately the decision of medical and/or mental staff and may not be granted to all committed persons who request it. Therapeutic services is aware of your past issues and has stated they are working to assist you with coping with them."

17. Plaintiff forwarded this grievance to the grievance officer, which was to go to the ADA Coordinator since it dealt with ADA accommodations (cell assignment) for mental health purposes.

18. On February 3, 2016, plaintiff was moved from the single cell housing unit #44 to a double cell housing unit #66.

19. Upon arrival to H.U. #66, plaintiff asked to speak to a crisis team member due to PTSD symptoms concerning his cell assignment issue.

20. Ms. Weingand, a crisis worker, responded to plaintiff's request for a crisis member.

21. Ms. Weingard stated to plaintiff that defendant Armour said that he was willing to be flexible and move him in the cell with someone he was cool with, but he was not going to honor

Dr. Marquez's single cell recommendation.

22. Plaintiff then told Ms. Weingand about his mental health history, his anxiety associated with double-cell environments, the fact that he was sexually assault by former cellmates, and that Dr. Marquez recommended that he be single celled because plaintiff feared that he might kill his cellmate.

23. Ms. Weingand said that she understood plaintiff's concerns and said that she would relate them to defendant Armour.

24. About an hour ~~after~~ after speaking to crisis member Ms. Weingand, a sergent, name St. James, came to H.U.#66 and cuffed plaintiff up and took him to room restriction in H.U.#33.

25. Plaintiff asked Sgt. James why was he going to room restriction and he was told because, "you pissed Armour off."

26. Later that day, on the 3-to-11 shift, the plaintiff received a disciplinary report stating that plaintiff refused housing assignment, charging him with a charge of disobeying a direct order.

27. On February 4, 2016, 7-to-3 shift, the plaintiff received a disciplinary report for cell

damage. He was then moved to another cell, and during the 3-to-11 shift received another disciplinary report for cell damage and was sent to segregation, where he spent 11 days until the damage to property tickets were expunged, but not after being sentence to 5 days room restriction for the false ticket written for refusing cell assignment.

28. On February 3 and 7, 2016, plaintiff ▉▉▉ wrote grievances regarding staff conduct against defendant Armour for having him sent to room restriction ▉▉▉▉▉▉ but defendant Armour denied doing anything wrong.

29. In April 2016, (not sure of the exact date) plaintiff spoke with defendant Armour in the chow hall regarding his cell assignment. Defendant Armour required the plaintiff to prove to him that he needed single cell placement by assaulting his cellmates, "Once you fuck up a few cellies, then we'll talk about a single cell."

30. On May 9, 2016, plaintiff informed his Mental Health Professional, Mr. Block, after his Structure group meeting, that he would kill the next person who trys to sexually assault him. Mr. Block informed therapeutic services regarding

the plaintiff threats but nothing happen;
plaintiff remained double celled.

31. On information and belief, the de-
fendants were made aware of wide spread
violations of mental health care to IDOC ~~prison~~
prisoners' in *Rasho v. Baldwin et. al.*, #07 cv 1298.

32. On information and belief, It is
expected that MHPs (Mental Health Professionals)
will monitor the location of each SMI
(Serious mental ill) offender on their case load.
IDOC will require MHP's to alert security
Staff of their concerns regarding SMI offenders
housing assignments and related contraindica-
tions. In all instances, an SMI offender's
housing assignment shall serve "both" security
needs of the respective facility and the
treatment needs for the offender.

33. On information and belief, Staff do not want
to house prisoners who need single cell design-
ation ~~them~~ in single cells due to hostility and
discrimination toward SMI prisoners' who re-
quire them.

34. Dixon STC has more than 100 single cells
for SMI offenders who need them as part of
their treatment. But security Staff house most
offenders in single cell as a privilege for having

jobs, being confidential informants, and seniority.

## Deliberate Indifference

35. Defendant Dr. Chess is liable for Eight Amendment Violation for failure to act and turning a blind eye to serious medical needs

36. The plaintiff wrote Dr. Chess on December 28, 2016, regarding his severe anxiety, PTSD, bipolar depression, chronic cutting, and inter-personal disorder.

37. Plaintiff informed Dr. Chess that, at age 19, and while incarcerated in Pinckneyville C.C., he was sexually assaulted by a cellmate in 2002.

38. Plaintiff also informed Dr. Chess that his cellmate attempted to sexual assault him while incarcerated at the Cook County Jail, at age 25, in 2008

39. Plaintiff informed Dr. Chess that he beat the guy with a wooden cane until he was uncon-scious and appeared dead. That the matter was investigated by the Cook County Sheriff's Police Dept and the Cook County States Attorneys Office.

40. The plaintiff informed Dr. Chess that he has feelings of rage, anger, and distrust towards cellmates. That he is guarded, suspicious, and moody around

them. That he often had flashbacks, nightmares, jitters, and insomnia when double cell. And that he uses self injury to cope with being double celled. He also informed her of homocidal ideations, and that he is currently self injuring to relieve stress and anxiety.

41. Plaintiff has written Dr. Chess on 12/28/15; 5/23/16; 9/18/16; and 10/27/16, regarding plaintiffs many concerns regarding his compulsion to self injure, as well as chronic cutting, flashbacks, nightmares, insomnia, restlessness, and homocial ideations and she has not responded at all.

42. Defendant Donald Enloe is liable for Eight Amendment violations for his failure to act and turning a blind eye to plaintiffs serious mental health needs.

43. Former Warden, Donald Enloe, was made aware of plaintiff wrongful denial of single cell status, compulsion to self injure, homocidal ideations, and PTSD symptoms, when plaintiff wrote him a letter on 12/28/15; 1/5/16; and 5/23/16.

44. Plaintiff also filed several emergency grievances with him on 4/9/16; 5/9/16; and 5/23/16. Defendant denied that the grievances involved substantial, and serious injurey to self

or irraparable harm.

45. Defendant Enloe never responded to grievances dated 5/9/16 and 5/23/16, but denied grievance 4/9/16, as non emergency.

46. Defendant Enloe never responded to any of plaintiff letters nor did he intervene

47. Defendant Micheal Gorman is also liable for Eight Amendment violations for failure to act and turning a blind eye to plaintiffs serious mental health needs.

48. The plaintiff have spoken with defendant Gorman personally and in writing. Plaintiff has informed defendant Gorman of his inability to cope with his mental illness while housed in double cell assignment. Plaintiff informed defendant Gorman regarding suicidal and homocidal ideations.

49. Plaintiff wrote letters to defendant Gorman on 12/28/15; 7/4/16, and 10/27/16. Defendant Gorman never responded to the plaintiffs' letters.

50. Defendant Robert Armour liable for Eight Amendment violations including First Amendment violations.

51. Defendant Robert Armour was deliberate indifferent to the serious mental health needs when he intentionally interfered with the rec-

ommendation made by the plaintiff psychi-
atrist on 2/3/16. Defendant Armour was made
aware of the recommendations made by
plaintiff's treating psychiatrist when he moved
plaintiff to a double cell.

52. Defendant Armour refuse to accommo-
date the plaintiff and retaliated against the
plaintiff when plaintiff questioned and complained
about the decision, by placing the plaintiff
on room restriction and instructing the unit
officer to lie and write a disciplinary report
Stating that plaintiff refused housing.

53. And as a direct result of the actions
of defendant Armour the plaintiff received
two (2) more disciplinary reports written on
2/4/16, while on room restriction for damage
to two (2) different cells.

54. Plaintiff was then sent to disciplinary
Segregation until the adjustment committee
conducted a hearing where it was determined
that the damage was done prior to plaintiff
being placed on room restriction. The plaintiff
spent 11 days in segregation, and received
5 days for the initial disciplinary report
for refusing housing.

55. During the month of April 2016, defendant

required the plaintiff to prove to him that he needed double cell status by attacking his cellmates.

56. Defendant John Varga is also liable for Eighth Amendment violations for failure to act and turning a blind eye to plaintiff's serious mental health needs.

57. Defendant Varga was first made aware via grievance written on 6/1/16, which he denied as not being an emergency on 6/9/16. Since then the plaintiff have written defendant Varga several times.

58. Plaintiff wrote to defendant Varga on 7/4/16, including an emergency grievance dated 2/28/17 #17-2-E67, which was denied as non-emergency.

59. In that grievance the plaintiff spoke of self injuring to cope with anxiety and having homocidal ideations while being double-celled.

60. All defendants have failed to accommodate the plaintiff with a single cell designation despite having a ~~xxxxx~~ formal policy, to designate single cell status to "SMI" prisoners whose mental health illness requires it, and safety and security of the

institution demands it.

61. All defendants' had the ability and authority to accommodate the plaintiff with a single cell designation for the purposes of achieving both goals of treating the plaintiff and providing safety and security.

62. All defendants are aware that the plaintiff cuts himself to cope with stress and anxiety associated with his mental health disorders, and has ignored his complaints.

63. All defendants are aware that several cellmates of the plaintiff has requested cell changes because of threats made by the plaintiff, and fear that the plaintiff might attack them. And rather than place plaintiff in a single cell, his cellmates were just exchanged.

WHEREFORE, plaintiff requests that the court grants the following relief:

A. <u>Issue a declaratory Judgment stating that:</u>
   1. That the intentional interfering with treatment once prescribed violated the plaintiff's rights under the Eight Amendment to the United States Constitution.
   2. That same Eight Amendment principles apply

to Mental health care as does Medical care
for common health problems.

3. That deliberate indifference to an
inmate's serious mental health needs violate
the Eight Amendment. And that treatment of
the mental disorders of mentally disturbed in-
mates is a serious medical need.

4. That defendants' Chess, Enloe, Gorman, and
Varga failure to act and turning a blind eye
to the serious mental health needs of the
plaintiff violated his Constitutional Rights.

5. That defendant Armour interference of
medical orders, placing plaintiff on room
restriction, and ordering an officer to write
a false disciplinary report violated his
Eight Amendment and First Amendment
right.

6. That failure to make reasonable accommo-
dations that would have allowed the plaintiff
to exercise the full benefit of the residential
treatment program violated his ADA and Rehabi-
litation Act Statutory rights.

B. Issue an injunction ordering defendants
Chess, Gorman, Varga, or their agents
to:

1. Immediately designate for the plaintiff

to be placed on single cell designation

2. Immediately treat him for his mental health illnesses and ~~treat~~ any physical and mental health trauma stemming from the wrong denial of his single designation.

3. Carry out without delay the treatment directed by such mental health professional.

C. ~~~~ Issue an injunction ordering defendant Varga to:

1. Expunge the disciplinary conviction described in this complaint written on 2/3/16 from the plaintiff's institutional record.

D. Award compensatory damages in the following amounts:

1. $100,000 jointly and severally against all defendant for the physical and emotional injuries sustained as a result of the plaintiff's self injuries, and mental anguish.

2. $10,000 against defendant Armour ~~~~ for the punishment plaintiff received as a result of him exercise of his First Amendment right. As well as for the segregation time plaintiff did as a result of the false disciplinary report. And the deprivation of liberty and amenity and emotional injury resulting from his retaliation.

E. Award punitive damages in the following amounts:

    1. $20,000 against defendant Armour.
    2. $15,000 each against defendants Chess and Gorman.
    3. $10,000 each against defendants Varga and Enloe.

F. Grant such other relief as it may appear that plaintiff is entitled.

[Date] 3/26/17
Respectfully Submitted,

Micheal J Parish #K84246

2600 N. Brinton Ave
Dixon, IL 61021

V.    **Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

_____

_____

_____

_____

_____

_____

_____

VI.   The plaintiff demands that the case be tried by a jury.   ☒ YES   ☐ NO

CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this ___26___ day of _March_ , 20_17_

_____
(Signature of plaintiff or plaintiffs)

_Micheal  J.  Parish_
(Print name)

_K84246_
(I.D. Number)   _Dixon Corr. Ctr._

_2600 N. Brinton Ave_

_Dixon, IL  61021_
(Address)

6

Revised 9/2007

STATE OF ILLINOIS  )
                   ) SS
COUNTY OF *Lee*    )

*Exhibit A-1*

### A F F I D A V I T

I, *Micheal Parish #K84246* under penalties as provi-
ded by law pursuant to Section 1-109 of the Code of Civil Proce-
dure, the undersigned certifies that the statements set forth in
this instrument are true and correct, except as to matters therein
stated to be on information and belief and as to such matters the
undersigned certifies as aforesaid that he verily believes the
same to be true.

*In 2002, I was groomed and sexually abused
over the course of 3 weeks by a cellmate by
the name of Robbie Gun. And out of fear, humiliation,
and disbelief I never told anyone. I was only 19
yrs old. This was my first bid and I was
vulnerable. In 2007, a cellmate attempted
to sexually assault me. I defended myself to
the fullest of my capability. I beat and
stabbed him with a wooden cane which belonged
to him. I wanted and tryed to kill him. I told
myself in 2007 that I would never be taken
again and I meant it. I beat this guy*

Subscribed and Sworn to before
me this ___6___ day of *May*,
*2016*.

*Margaret Thomas*
Notary Public

Respectfully Submitted,

*Micheal Parish*

Affiant
Name: *Micheal Parish #K84246*
ID# ___*Dixon*___
      Correctional Center

OFFICIAL SEAL
MARGARET THOMAS
Notary Public - State of Illinois
My Commission Expires 8/25/2019

STATE OF ILLINOIS

2 of 5 pg.

COUNTY OF *Lee* ) SS

*Exhibit A-1*

## A F F I D A V I T

I, *Micheal Parish #K84246* under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

*Unconscious with the serious intent on Killing him. I was 25 yrs old and his name was Tyrone "Twin". He tried to take advantage of me while I was asleep. The 2002 incident happen at Pinckneyville CC. and the second at Cook County Jail (Chicago). For these reasons I cannot cope with being in the cell with other inmates. I always get into verbal or physical conflicts. I attempt to cope by self mutilation and crisis watch. I suffer from homicidal ideations, nightmares, hyperarousal, moodswings, flashbacks (nnnn), jitters, its like I*

Subscribed and Sworn to before me this 6 day of *May*, 2011.

*Margaret Thomas*
Notary Public

Respectfully Submitted,

Affiant
Name: *Micheal Parish #K84246*
ID#
*Dixon*
Correctional Center

OFFICIAL SEAL
MARGARET THOMAS
Notary Public - State of Illinois
My Commission Expires 8/25/2019

STATE OF ILLINOIS
Case: 3:17-cv-50097 Document #: 1 Filed: 03/29/17 Page 32 of 72 PageID #:32    3 of 5 pg.
COUNTY OF  Lee           )  SS

Exhibit  A-1

A F F I D A V I T

I, _Micheal Parish #K84246_ , under penalties as provi-
ded by law pursuant to Section 1-109 of the Code of Civil Proce-
dure, the undersigned certifies that the statements set forth in
this instrument are true and correct, except as to matters therein
stated to be on information and belief and as to such matters the
undersigned certifies as aforesaid that he verily believes the
same to be true.

_Sleep with one eye open. Prior to coming to
Dixon I had conflict with 3 different cellmates
Two of them were moved by correctional Staff
and the 3rd had me on the verge of
Killing him because he didn't respect my
boundries. And my last cellmate I had here made
me feel the Same way. He invaded my space
too much and in turn I had homocidal
ideations. He adventually Walked himself to room
restriction. I even admitted to Mr. Block, the
QMHP, in front of my old cellmate that _____ I
felt like Killing him on 5/25/16 and my old celle
admitted that I told him that during Structure group on_

Subscribed and Sworn to before
me this __6__ day of _May_ ,
_2016_

_Margaret Thomas_
Notary Public

Respectfully Submitted,

_[signature]_

Affiant
Name: _Micheal Parish_
ID# _____
        Dixon
        Correctional Center

OFFICIAL SEAL
MARGARET THOMAS
Notary Public - State of Illinois
My Commission Expires 8/25/2019

Exhibit A-1

### A F F I D A V I T

I, Micheal Parish #B04246, under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

5/9/16. Dixon Staff choose to give the Single Cell's to inmates who either are "Snitches" or have been on the unit for a long time. Lt. Armour, Superintendent Gorman, and Warden Enloe all are being deliberately indifferent to my mental health needs. Lt Armour wants me to prove to him that I need a one man cell by being aggressive with my cellmates. Gorman and Enloe are fully aware of Armour's intentions and turned a blind eye toward his behavior. And I'm still have problems exhausting grievances. And no one is telling how to get passed the first stage of the grievance process or where

Subscribed and Sworn to before me this 6 day of May, 2016

Margaret Thomas
Notary Public

Respectfully Submitted,

Affiant Name: Micheal Parish
ID# Dixon Correctional Center

OFFICIAL SEAL
MARGARET THOMAS
Notary Public - State of Illinois
My Commission Expires 8/25/2019

STATE OF ILLINOIS
Case: 3:17-cv-50097 Document #: 1 Filed: 03/29/17 Page 34 of 72 PageID #:34
COUNTY OF Lee    ) SS    5 of 5 pg.

Exhibit A-1

## A F F I D A V I T

I, Micheal Parish #K81246, under penalties as provi-
ded by law pursuant to Section 1-109 of the Code of Civil Proce-
dure, the undersigned certifies that the statements set forth in
this instrument are true and correct, except as to matters therein
stated to be on information and belief and as to such matters the
undersigned certifies as aforesaid that he verily believes the
same to be true.

My missing grievances are. Dixon has a poicy
or practice of allowing the 11-to-7 shift
sergents collect inmate grievances. Several of
My grievance were against a sergent and
can a few lieutenants. Some of my
grievences have come back. But I believe that
the Sergents are being selective of what grie-
vances they want to get processed to the
next level. I'm so stressed out and filled with
Anxiety, I've been secretly self harming to cope.
I have self injured 11 times so far at Dixon,
I just can't cope with cellmates.

Subscribed and Sworn to before
me this _6_ day of May,
2016

Murgaret Thomas
Notary Public

Respectfully Submitted,

Affiant
Name: Micheal Parish
ID# Dixon
Correctional Center

OFFICIAL SEAL
MARGARET THOMAS
Notary Public - State of Illinois
My Commission Expires 8/25/2019

STATE OF ILLINOIS )
  ) SS
COUNTY OF Lee )

Exhibit A-2

A F F I D A V I T

I, Micheal Parish #K84246, under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

On 5/9/16, I spoke with Mr. Block, a QMHP for Dixon's RTU program after our Structure meeting that day. I informed him that I can't deal with being in the cell with other people due to past sexual trauma I suffered at the hands of cellmates. I was feeling hyperaroused at the time. I told him that I didn't trust being in the cell with other people because I feel that they will try to sexually attack me. I also informed him that if the wrong person comes in my cell, and he try's to sexually assault me, I will kill him! And I'm serious.

Subscribed and Sworn to before me this 27 day of May, 2016.

Margaret Thomas
Notary Public

Respectfully Submitted,

Affiant
Name: Micheal Parish K84246
ID# Dixon
Correctional Center

OFFICIAL SEAL
MARGARET THOMAS
Notary Public - State of Illinois
My Commission Expires 8/25/2019

*Exhibit A*

State of Illinois          IN THE
County of Lee

Micheal Parish, J.                    )
Plaintiff/Petitioner                   )
                                       )
          Vs.                          )
                                       )   No. Single cell Status
Dr. Chess, et. al.,                    )       Accommodations
Defendant/Respondent                   )

## PROOF/CERTIFICATE OF SERVICE

TO: Dr. Chess                          TO: Dr. Stone
Of Dixon C.C., 2600 N.                 Of Dixon C.C., 2600 N.
Brinton, Avenue, IL                    Brinton, Avenue, IL
61021 USA                              61021 USA

PLEASE TAKE NOTICE that at: 6:35 AM/PM) September 18, 20 16, I
placed the documents listed below in the institutional mail at Dixon C.C.
Correctional Center, properly addressed to the parties listed above for mailing through the
United States Postal Service.                    (5/6/16)
1) five page affidavit; and 1) one page
affidavit (5/27/16)

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109 I declare, under penalty of perjury
that I am a named party in the above action, that I have read the above documents, and that
the information contained therein is true and correct to the best of my knowledge and belief.

DATED: 9/18/16

/s/ M. P. P.
Name: Micheal Parish, J.
IDOC No. K84246
          Dixon          Correctional Ctr,
POB 2600 N. Brinton, Avenue
          Dixon          , IL
                              61021

Revised 4/15/16

STATEMENT
OF
FACTS

Exhibit B-1

To; Warden Enloe, CAO        5/23/16

This is actually my third
time writing you regarding my
single cell status. I first wrote to
you on 12/28/15 and again 1/5/16.
On 1/18/16, Dr. Marquez wrote
a link to my treatment plan stating
" at this point he can probably
cannot be celled with other inmates
due to trauma and interpersonal
deficits." I stressed to Dr. Marquez
that I get freaked out being in
the cell with other inmates due to
past sexual assaults by cellmates.
I also told him that I almost
killed the last person who attempted
to sexually assault me. I have
been very candid about my
past for the first time in my life.
Due to untreated PTSD, in 2005
I killed a person that I didn't
even know for no reason at all.
By the grace of God I was acquitted
due to lack of evidence, and

Exhibit B-1

uncooperative witnesses, but still it was bad.

In 2002, I was sexually assaulted by a cellmate that I thought was trying to be my friend but yet he was grooming me for his own sexual pleasure. This went on for 3 weeks — I was only 19 yrs old. I was so messed up mentally I never trusted a cellie ~~againo~~ again. In 2008, I had a cellmate try to assault me while in the Cook County Jail. And because of the first incident, I told myself that the next time someone trys me like that I would kill them, and thats what I tryed to do to the second guy. I beat him unconsicous. I wanted to kill him for what he tryed to ~~dom~~ do. I saw red! I still want him dead. I cannot deal with cellies for that reason. I always get in conflict with them because I'm supicious of them. When I'm in the cell with them, I don't talk to them,

Exhibit B-1

I don't share with them, I don't accept things from them, and I don't tolerate their bull shit! I can't sleep, I'm anxious around them I have nightmares and I frequently have fights with ~~them~~ them. But ~~them~~ What I ~~them~~ usually due to cope with the stress ~~them~~ is cut myself. And to be perfectly honest, I have secretly cut myself since being here.

Now, I've wrote grievances but my grievances doesn't seem to make it past the first stage. Dixon has an inadequate grievance process. But on my grievance dated 12/30/15 the counselor responsed by saying that single cell status is up to medical/mental Staff. Well, as afore-mentioned, Dr. Marquez wrote a link to my treatment plan recom-mending a single cell due to trauma and interpersonal deficits. And once medical/mental health gave me the green light, correctional staff refuse to honor the recommendation.

Exhibit B-1

Lt. Armour sent me to room restriction
for refusing to be housed with
another inmate. And from room restriction
I was sent to segregation because
I kept complaining.

In March of 2016, Lt. Armour
told me that I had to prove to him
that I needed a one man cell. He
further stated "once I fuck up a few
cellies then he'll think about put me in
the cell by myself."

Lt. Armour and Supt. Gorman
has a policy or practice of giving the
one man cells to people with jobs, people
who been on the unit the longest, and
people who inform on other inmates.
Dixon has a policy that will accommo-
date inmates who need a single cell
but Lt. Armour wants me to become
assaultive and aggressive in order to
get it.

I wrote you an emergency
grievance outlining the recommendation
made by Dr. Marquez, as well as
Lt. Armour's comments and you
treated it as a none emergency.

Exhibit B-1

I would like for you to re-look at this issue. I'm not psychologically fit to be in the cell with another inmate. I have self injurious and homocidal ideations. I'm tense around them, moody. I always seem to get in conflict with them regarding my personal space. I hear about people masterbating in the cell while their cellie is in the cell. A handful of guys engage in homosexual activity, and I'm homophobic. I'm not trying to hurt anybody nor am I trying to get hurt. I promised myself that the next individual who tryo to seduce me or engage me in some kind of sexual situation I will in fact kill him! I will not allow anyone to force his will on me.

So, I am asking you to grant my single cell status. It has already been document by my former psychiatrist Dr. Marquez. And I would like for you to look into my misplaced grievance situation.

Exhibit B-1

I'm trying to exhaust my admini-
strative ~~remedies~~ remedies. I do
not have the ability to cope with
cellmates due to past trauma, and
I'm not looking to hurt anyone
for crossing boundaries. My last
celly walked himself because he couldn't
deal with keeping his own space. I
was experiencing homocidal ideations.
He was doing things that had me
experiencing flashbacks of my past. He
was sitting to close to me. Urinating
with his penis facing my way direction.
He also use to try and brush past me
whenever he had to past by me. I
told him to stop doing that shit, because
if his pelvis area touch any part of
my body, I was going to kill him. He
eventually walked himself.

    I don't want no problems. I just
want my doctor orders honored. And I
want my grievances exhausted. I am
trying to cope with all this madness
the best way I can. I've even ~~they~~
started cutting again in order to
calm down. I don't know how long

Exhibit B-1

this will help.

I declare under the penalty of perjury that the aforementioned is the truth. And I have place a copy of this correspondence in the institutional Mail addressed to Warden Enloe on 5/23/16

OFFICIAL SEAL
MARGARET THOMAS
Notary Public - State of Illinois
My Commission Expires 8/25/2019

Micheal Parish #K84246
S/M P P P

SUBSCRIBED AND SWORN TO BEFORE
ME ON THIS 23 DAY OF May, 2016
Margaret Thomas
NOTARY PUBLIC

To, Dr. Chess

From; Micheal Parish #K84246

Declaration          Exhibit B-1

I am being denial adequate mental health treatment by the RTU Staff at STC Dixon.

I was recommended by Dr. Marquez to be in a single cell due to interpersonal deficits and trauma, but y'all don't want to honor shit. Y'all think this shit is a game! When someone end up dead because of your lack of awareness then who is the blame? I can't deal with these gay-ass-inmates being housed with me. I will never allow anyone to take advantage of me again. Even if I think one of these dudes are on that I will kill them.

I'm done explaining and begging you for help — I don't care anymore.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109. I declare, under penalty of perjury that the foregoing is true and correct.

Date: 5/23/16          Name: Micheal Parish #K84246
Is/ Micheal Parish    Address: 2600 N. Brinton Ave
                                Dixon, IL 61021

*Exhibit B*

_State of Illinois_ **IN THE**

_County of Lee_

_Micheal J. Parish_ )
**Plaintiff/Petitioner** )
)
Vs. )
_Warden Enloe, CHO_ )
**Defendant/Respondent** _Dixon C.C._ )

No._____

## PROOF/CERTIFICATE OF SERVICE

TO: _Warden Enloe, CHO_     TO: _Dr. Chess_
_of Dixon C.C. 2600 N._          _of Dixon C.C. 2600 N._
_Brinton Avenue, Dixon,_        _Brinton Avenue, Dixon,_
_IL 61021_                              _IL 61021_

PLEASE TAKE NOTICE that at: _5:40_ AM/(PM) _May 23,_ , 20_16_, I
placed the documents listed below in the institutional mail at
Correctional Center, properly addressed to the parties listed above for mailing through the
United States Postal Service.
_State of facts address to Warden Enloe and a_
_declaration address to ~~Doc~~ Dr. Chess_

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109 I declare, under penalty of perjury
that I am a named party in the above action, that I have read the above documents, and that
the information contained therein is true and correct to the best of my knowledge and belief.

DATED: _May 23, 2016_

/s/ _____
Name: _Micheal J. Parish_
IDOC No. _K84246_
_Dixon_ Correctional Ctr.
POB _2600 N. Brinton, Ave_
_Dixon_ , IL
_61021_

From; Michael Parish

# Declaration

I am being discriminated against and it is happening on your watch. I have a right to have my psychiatrist recommendations honored regarding my cell designation. See Madrid v. Gomez, 889 F. Supp. 1146, 1221 (N.D. Cal. 1995) (lack of input by mental health staff concerning housing decisions even where they impact mental health supported deliberate indifference finding).

You have not responded to any of my letters concerning retaliation and discrimination in regards to my mental health needs. See Allegheny County Jail v. Pierce, 612 F.2d 754, 762-63 (3d Cir. 1979) (inmates with mental disorders are entitled to reasonable access to medical personnel qualified to diagnose and treat those disorders). As of right now, Dr. Fischer is my psychiatrist and he is totally incompetent. I have got into verbal disputes with him 3 times — heated disputes. He has told me that he will recommend whatever treatment the security staff wants him too. I can't be treated by an individual who always will recommend treatment based on the whims of

the correctional staff. He has been no help
concerning my issues with interpersonal
defic . He has even told me to "forget
about the single cell thing... they don't like
giving them out." He said this, even though
I told him that I think about killing my
cellies sometimes. See Collignon v. Milwaukee
County, 163 F.3d 982, 989 (7th Cir. 1998) ("A plain-
tiff can show that the professional ~~~~~~~~
~~~~~~~~~ disregarded the need only if the
professional's subjective response was so in-
adequate that it demostrated an absence of
professional ~~~~~~~~~~~~~~~~~~~~~~~~~~ judgment;
~~~~ that is, that no minimally competent
professional would have so responded under
those circumstances.")

  I've written letters, grievances, and
spoke to mental health staff personally
regarding my issues but to no avail. On
May 9, 2016, I told QMHP Block that I
will kill the next cellmate who trys to
hurt me and you, Dr. Chess, still won't ensure
that my single cell issues are address.
I've even wrote letters and grievances
Stating that I self injure to cope with
my anxiety something that is well known

to mental health staff but no one has
responsed adequately. See Waldrop v. Evans,
871 F.2d at 1036 (physician's failure to
refer a suicidal prisoner to a psychiatrist
could constitute deliberate indifference);
De'Lonta v. Angelone, 330 F.3d 630, 635 (4th
Cir. 2003) holding prisoner... was entitled to
treatment for compulsion to self mutilate)
    I was sent to STC to get treat-
ment and to better control my responses
to stress and anxiety but nothing has
changed. There is extreme hostility towards
STC prisoners' compared to general
population. I have seen the difference
in treatment firsthand. This is in
direct violation of the ADA and Rehab-
ilitation Act. It is also in violation
of the consent decree entered concerning
the Rasho settlement.
    I need you to take my issues
serious. There is a lot of sexual
misconduct and harassment going on
at Dixon STC. And these sexual
deviants are placed in the cell with
any one. I promise you this. If one
of these perverts are put in the cell

with me I will kill them! I will never allow the things of the past to take place again in my future. I'm tire of asking you for help and assistance — fuck that. Lt. Armour said prove to him, so I'll prove to all y'all.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I placed the above aforemention in the institional mail box at Dixon C.C. and addressed to Dr. Chess and Superintendent Gorman

Micheal Parish #K84246
2600 N. Brinton Ave
Dixon, IL 61021

Date: 10/27/16

PERSONAL COPY

Exhibit C

IN THE
_State of Illinois_
_County of Lee_

Micheal J. Parish
Plaintiff,

v.

Case No. _____

Superintendent Gorman
Defendant                et. al.,

## PROOF/CERTIFICATE OF SERVICE

TO: Superintendent
Gorman, 2600
N. Brinton Ave
Dixon, IL 61021

TO: Dr. Jamie Chess
2600 N. Brinton Ave
Dixon, IL 61021

TO: _____

TO: _____

PLEASE TAKE NOTICE that on _October 27_ , 20_16_, I have placed the documents listed below in the institutional mail at _Dixon_ Correctional Center, properly addressed to the parties listed above for mailing through the United States Postal Service: _Declaration under penalty of perjury regarding ADA and Rehabilitation Act discrimination._

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109, I declare, under penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: _10/27/16_

/s/ _____
NAME: _Micheal Parish_
IDOC#: _K84246_
_Dixon_ Correctional Center
_2600 N. Brinton Ave_
_Dixon_ , IL _61021_

From: Micheal J.Parish #K84246
To; Warden Varga, CAO of Dixon C.C.
Re: Denial of prison programs and services
Date: 7/4/16

*Exhibit D-1*

    I am being wrongfully denied prison programs and services by
Dixon C.C. I have been at Dixon C.C. for over 6 months and have
been denied the opportunity to earn good conduct credits for
participating in prison programs such as college and correctional
industries. I have been told by prison staff that I cannot
participate in correctional industries because I'm in S.T.C.
I was also told by the college admin. Mr. Stevenson that I can-
not attend college.
    According to the Rasho settlement, as well as the ADA and
Rehabilation Act, I cannot be denied participation in prison
programs or services due to my mental health status. And I am to
be given reasonable accommdations that would allow me to partic-
ipate in said prison programs. Dixon C.C. is discriminating
against me for no other reason then because I'm in S.T.C.
The Warden refuses to grant me permission to attend college in
order to earn good time. Prior to coming to Dixon S.T.C I was
allowed to attend college classes in order to receive good time.
Accorjing to the Administrative Directives, I need the CAO and
EFA permission to continue to attend college because I have more
than two post secondary certificates or degrees. Lake land college
admin. Mr. Stevenson took it upon himself to deny me access to
college without taking the issue up with the Warden and EFA. If
I was granted reasonable accommodations by the CAO, Warden Varga,
in accordance with the ADA and Rehabilitation Act, I would be
allowed to attend college in order to continue receiving pro-
gram sentence credits.
    My outdate is being significantly affected due to mental
health discrimination. If I was at a different facility, I would
be able to choose from three different program sentence outlets:
college, substance abuse, and correctional industries. Dixon does
not have substance abuse, and they do not allow S.T.C inmates
to work in correctional industries. I have trlled to transfer 3
different times and have been denied each time. Dixon does not

want to transfer me, and does not want to allow me to engage in any programming that would allow me to receive sentence credits. As stated above, the IDOC agreed on a settlement in the Rasho claim, agreeing that it wont discriminate against an offender for being mentally ill. Also, according to Federal Law, prisons are required to grant reasonable accommodations to mental health offenders in order engage in prison programs.

In closing, I am asking for the Warden (CAO) and EFA to grant me permission to college programs or correctional industries, in order to receive program sentence credits. I am eligible to receive good time for attending programs. And if I cannot attend school, I would like to transfer to another facility.

Pursuant to 28 U.S.C.1746, 18 U.S.C.1621 or 735 ILCS 5/1-109 I declare under penalty of perjury that the foregoing is true and correct.

Verly truly yours,

2 of 2

To, Superintendent Gorman
3, Warden John Varga

Declaration          Exhibit D-2

I have been denied a single cell
accommodation since I got here.
    I was recommended by Dr. Marquez
to be accommodated with a single cell due
to interpersonal deficits and trauma. I explained
to him that I experience extreme paranoia
when I'm in the cell with other people, and I'm
very guarded and suspicious of them. I further
told him that I use self injury to reduce
stress and anxiety. And when I go through prolonged
periods of mania I can become extremely
excited and violent.
    Dixon staff, including administrative official,
are intentionally interfering with treatment
previously recommended by my psychiatrist.
I have homocidal ideations and para-suicidal
actions. — I still use self mutaliation to cope
with double-cell placement.
    My stress, paranoia, and cutting, and anxiety
is due to past traumatic events where I was
sexually assaulted by to cellmates. The first time
was when I was 19 years old, at Pinckneyville
C.C. The second time was when I was 25 years
old, at the cook county jail; — I almost killed
the guy.
    I can't cope with my mental health diag-

(1)

nosis while being housed in double-cell situations.
I think about killing my cellmates and burning
their dicks with molten lead. I fight back thoughts
with all the strengthen that I have but it is
becoming more and more difficult.

In April of this ~~xxxxx~~ year, Lt. Armour
required me to prove to him that I need to
be placed in a single cell. He stated that, "after
you fuck up a few cellie, then we'll talk
single cell."

In February, Lt Armour moved me from
a single cell, ~~xxxxxx~~ weeks after Dr. Marquez
recommended me for single cell status, and he
sent me to room restriction in retaliation for
requesting that my doctor orders be honored.
And despite the fact that I self injure to
cope with anxiety associated with the double
cell situation, and I suffer ~~xxxx~~ homocidal ideations,
the STC staff, both security and ~~xxxxxx~~ mental health, aren't
in my best interest.

So if I get killed then its on you. And
if I kill someone its on you.

Pursuant to 28 USC 1746; 18 USC 1621 or
735 ILCS 5/1-109, I declare, under penalty of
perjury that the foregoing is true and correct.

Date: 7/4/17                    Micheal J. Parish #B84246

/2\

*Exhibit D*

State of Illinois    IN THE

County of Lee

Micheal Parish, J.                    )
Plaintiff/Petitioner  K84246          )
                                      )
        Vs.                           )    No. Denial of Prison
                                      )    Programs and services
Warden Varga, CAO                     )
Defendant/Respondent  DIXON C.C.)

## PROOF/CERTIFICATE OF SERVICE

TO: Warden Varga, CAO        TO: Superintendent Gorman
of Dixon C.C., 2600          of Dixon CC 2600 N.
N. Brinton Avenue,           Brinton Avenue,
Dixon, IL 61021              Dixon, IL 61021

PLEASE TAKE NOTICE that at: 3:15 AM/PM July 4, 2016, I
placed the documents listed below in the institutional mail at Dixon
Correctional Center, properly addressed to the parties listed above for mailing through the
United States Postal Service.

Denial of educational programs and single cell
accommodation as recommended by a psychi-
atrist.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109 I declare, under penalty of perjury
that I am a named party in the above action, that I have read the above documents, and that
the information contained therein is true and correct to the best of my knowledge and belief.

DATED: 7-4-16

/s/ Micheal Parish
Name: Micheal Parish, J
IDOC No. K84246
Dixon          Correctional Ctr.
POB 2600 N. Brinton Ave
Dixon                , IL
61021

Revised 4/15/16

*Exhibit E*

ILLINOIS DEPARTMENT OF CORRECTIONS

## Mental Health Diagnostic and Treatment Note

Page 1 of 2

Offender Name:  Parish, Michael _____   ID# K84246 _____

Date 7-27-2010 _____

| Juvenile Facilities Only: | |
|---|---|
| Housing Unit:_____ | Correctional Counselor:_____ |
| Psychiatrist:_____ | Psych Medication:_____ |
| Mental Health Level:_____ | Recommended Mental Health Level:_____ |

Reason for Referral:

☒ Initial Evaluation   ☐ Medication Review   ☐ Mental Health Level Change   ☐ Crisis Response

☐ Group Note   ☐ 1:1 Note   ☐ Parole Clearance   ☐ Family Therapy   ☐ Other_____

Subjective Data: Patient was seen today via individual telemedicine consultation and available medical records were reviewed – partial chart was selected and provided by site clinical staff. Patient provided informed signed consent to evaluation, diagnosis, and treatment via this medium. Patient was specifically oriented to this process by this physician and consented to today's interview at the Lawrence CC.

Patient is a 27-year-old married black male, third adult incarceration, serving sentence for robbery with a 25 year sentence, along with drug charge and aggravated battery of harm to police officer. Patient expects release in May of 2021. Patient seen at Stateville NRC with working diagnosis of bipolar disorder with psychotic features per Dr. Yuan, though few data provided. Patient has history of one hospitalization at Christ Hospital in Oak Lawn, IL, only in 1996 for behavior problems. Patient endorsed a history of severe physical abuse by his mother, including beatings with a lead pipe that required urgent medical care. DCFS was involved but patient was never removed from that home. Eight siblings were subsequently moved out due to ongoing abuse. Patient has continued to have distressing recollections of this past abuse. He reported a history of an unstable and angry mood coupled with impulsivity, trust issues, etc. No clear history of hypomania or mania. Patient has fleeting "voices" described as internal negative comments from mother and other care provider but no delusions or other psychotic elements. Patient has history of three suicide attempts, the last in 2008 at Cook County jail, Division 10, by cutting his wrists and two prior overdoses. No active or passive suicidal ideations now. Patient also has a history in his early childhood of self-mutilation as an emotional release. Patient is currently on Depakote, Risperdal, and Remeron. No initial complaints of side effects but when these were reviewed, patient reported a history of a left sided breast lump that has been there for several years. Patient has a history of fairly regular cannabis use, along with experimentation with cocaine, hallucinogens, and PCP. His medical history is remarkable for asthma, umbilical hernia repair, and right shoulder injury. Patient is 6'2" and 198 pounds. NKDA.

Printed on Recycled Paper

DOC 0282 (Eff. 8/2005)
(Replaces DCA 7157)

ILLINOIS DEPARTMENT OF CORRECTIONS

## Mental Health Diagnostic and Treatment Note

Page 2 of 2

Offender Name: Parish, Michael

ID# K84246

Date 7-27-2010

Patient was born and raised on the south side of Chicago. He was raised primarily by his maternal grandmother and mother with history of significant abuse as mentioned. He is one of nine children. No foster care placement. Patient has an 8th grade education and has taken GED classes but has not completed his GED. Patient is a convert to Islam. No military service. No family history of psychiatric illness. History of juvenile arrest but no IYC placement. Patient has past gang affiliation. Past adult convictions for drug possession.

Objective Data: Patient is a black male who looked approximately his stated age. He was alert, oriented, well kempt, appropriately dressed, and easily engaged in conversation. He was not guarded, suspicious, hostile, challenging, or internally preoccupied. No tics, tremors, or TD. AIMS screening negative. Speech fluent and spontaneous and of normal rate, rhythm, and volume. Thoughts were well organized. Patient related in a pleasant and cooperative manner. Thought content – unremarkable. Mood mildly anxious and affect reactive. Insight and judgment – fair. History of impulse dyscontrol.

Assessment/Diagnosis:

AXIS I: Anxiety disorder NOS (PTSD features), rule out mood disorder NOS (including Axis II features), and polysubstance dependence.

AXIS II: Rule out ASPD.

AXIS III: ? left breast mass NYD.

AXIS IV: Prison.

AXIS V: 68.

Summary and Treatment Plan: Diagnosis, differential diagnosis, and treatment options discussed with patient. Risk/benefit analysis was completed at some length with patient. At this time, will continue Depakote EC in prescribed doses and check CBC, CMP, and VPA level. Increase Remeron to 30 mg per day to target depressive and anxiety symptoms. Gradually decrease Risperdal to 1 mg per day. Medical referral regarding left sided breast lump. Patient educated about medication, including risks, benefits, common and material side effects, and alternatives. Request signed release for Christ Hospital in Oak Lawn. Patient agreed with plan as outlined. RTC one month.

Dr. James Nielsen, Staff Psychiatrist          AUG 11 2010          Date

Supervisor Signature (if applicable)          Date

Distribution:  Offender Medical File
351 – jm

Distribution:  Offender Medical File

DOC 0282 (Eff. 8/2005)
(Replaces DCA 7157)

DOC 0282 (Eff. 8/2005)
(Replaces DCA 7157)

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS

## Mental Health Diagnostic and Treatment Note

**Page 1 of 1**

Offender Name:  Parish, Michael                                    ID#   K84246

Date:   02/23/16

| Juvenile Facilities Only: | |
|---|---|
| Housing Unit:_____ | Correctional Counselor:_____ |
| Psychiatrist:_____ | Psych Medication:_____ |
| Mental Health Level:_____ | Recommended Mental Health Level:_____ |

Reason for Referral:

☐ Initial Evaluation      ☒ Medication Review      ☐ Mental Health Level Change      ☐ Crisis Response

☐ Group Note      ☐ 1:1 Note      ☐ Parole Clearance      ☐ Family Therapy      ☐ Other_____

Subjective Data:   This is a 33 year old male. He is very clean-shaven and pleasant. He looks very intelligent. He told me that he is playing basketball so he wants to hurry up.  I looked at his history a little bit. Patient has had many incarcerations because he has gone into criminal behavior. He is very intelligent but does not use good judgment. Consequently he has a long rap sheet. He is very sensitive and takes things poorly and thinks people are disrespecting him. He gets into trouble because of his taking offense to small things.

Objective Data:   Mental Status Exam: Patient is clean-shaven, pleasant.  Good eye contact.  Very together. He has no thought disorder. No hallucinations. No delusions.  He seems very mature. He is very impulsive and does not make good decisions.

Assessment/Diagnosis:

AXIS I:   PTSD.  Polysubstance abuse/dependence in remission in a controlled environment.

Summary and Treatment Plan:   Dr. Marquez had started him on Effexor, small doses and was to increase it so I increased it to 75 mg p.o. q.h.s. He will continue on Remeron 30 mg p.o. q.h.s.  I will see him again in one month.

_____
Dr. Delsie Gavali, Staff Psychiatrist          Date          Supervisor Signature (If applicable)          Date

Distribution:  Offender Medical File
351-wb

DOC 0282 (Eff. 8/2005)
(Replaces DCA 7157)

ILLINOIS DEPARTMENT OF CORRECTIONS

## Special/Residential Treatment Unit Referral

Current Facility: DANVILLE CC

Date of Referral: 12/16/15

---

### Section I: Offender Information

Offender Name: Parish, Michael
Last, First, M.I.

ID #: K84246

D.O.B.: 2/4/83

Gender: ☒ Male ☐ Female ☐ Transgendered ☐ Other (identify gender preference): _____

Sexual Orientation: ☐ Lesbian ☐ Homosexual ☐ Bisexual ☒ Heterosexual

Race: ☐ White/Caucasian ☒ African American ☐ Hispanic ☐ Asian
☐ American Indian ☐ Other (Identify): _____

---

### Section II: Provisional Diagnosis

Diagnosis according to current DSM formatting guidelines: Current diagnosis is Anxiety Disorder NOS. Polysubstance abuse. Rule out PTSD.

---

### Section III: Rationale for Referral

Reason for referral. Include the offender's current symptom presentation and identify the offender's functional deficits that preclude an outpatient level of care setting. Pt. has a long history of cutting to relieve stress and anxiety. He reports having very few incidents of cutting at his previous institution, but has had 3 incidents since arriving at Danville in May. 2 of these incidents have been within the past 30 days. In addition, Pt has reopenned his wounds after they were dressed due to being upset that he was being placed in temporary confinement and being upset that he was being placed on a watch. Pt was released from his most recent watch on 12/10/15 with a safety plan in place to utilize coping skills and the crisis team. Pt has requested a crisis team member 5 out of 6 days due to his anxiety about discipline. Pt is unable to manage his anxiety without more intensive intervention.

---

Distribution: Medical Record

DOC 0416 (Eff. 2/2014)

Offender's current treatment plan. Include a list of current psychotropic medication(s) and dosage (note any TRC history) and offender's response to these interventions. Pt was previously prescribed Lamicatal 25 mg 2 tabs PO QHS and Remeron 15 mg 1 tab PO QHS, but was non-compliant due to not wanting to take Lamictal. His prescription was changed on 11/24/15 to Remeron 15 mg PO QHS only and Pt has been compliant with all but one day.

Have emergency enforced medications been administered? ...............................................☒ No ☐ Yes

    If yes, identify date(s) administered: _____

Offender's treatment history. Include any history of inpatient/outpatient hospitalizations and treatment, suicidal gestures and attempts, and substance abuse history. Pt reports a history of inpatient placements: 1996 at Christ Hospital; 1997-1998 at Colorado Boys Ranch; 1998-1999 at San Marcos Treatment Center in Texas; 2008 in Chester. Self report indicates that his started self mutilating at age 13. Substance abuse: Alcohol and Marijuana. Use began at age 12.

Has the offender ever been placed in an IDOC Special Treatment Unit or Residential Treatment Unit? ☒ No ☐ Yes

    If yes, identify the facility and date of placement(s). _____

entify how placement in a special treatment unit or residential treatment setting may benefit the offender and identify
ıy interventions or treatment recommendations. Pt would benefit from more intensive treatment through increased
ogramming available at an RTU. He would benefit from interpersonal skills as well as training in coping skills for his anxiety and
tting behaviors. Pt reports that he tends to stay away from people to avoid conflict and increased stressors. More intense group
erapy and programming would be beneficial for this Pt to improve his ability to interact and cope with less than ideal social
changes.

the offender currently on crisis watch? ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯ ☒ No    ☐ Yes

  If yes, identify the current watch level and reason for placement.

**ction IV: Current Mental Status Evaluation**

s anxious and impulsive. He perseverates on stressors until he is unable to manage his anxiety. Pt denies any suicidal intent or
nicidal thoughts. He has limited insight. Thoughts are well organized, but obsessive.

bution: Medical Record           DOC 0416 (Eff. 2/2014)

Parish K87946

Parish K87946

**Section V: MHP Recommendation**

Transfer to a Special Treatment Unit / Residential Treatment Unit is: ☒ Recommended ☐ Not Recommended

Comments: Pt would benefit from more intensive treatment through increased programming available at an RTU. He would benefit from interpersonal skills as well as training in coping skills for his anxiety and cutting behaviors. Pt reports that he tends to stay away from people to avoid conflict and increased stressors. More intense group therapy and programming would be beneficial for this Pt to improve his ability to interact and cope with less than ideal social exchanges.

Referral completed by:

| Melanie Easton, NCC, LCPC | Melanie Easton, NCC, LCPC | QMHP | 12/16/15 |
|---|---|---|---|
| Print Name | Signature | Title | Date |

**Section VI: Psychiatric Recommendation**

Transfer to a Special Treatment Unit / Residential Treatment Unit is: ☒ Recommended ☐ Not Recommended

Comments:

I AM IN SUPPORT OF TRANSFER OF PARISH K84246 TO A FACILITY WHICH CAN SUPPORT A RESIDENTIAL LEVEL OF CARE.

Psychiatric recommendation completed by: S Mc Cormick MD

| S. MCCORMICK | | REGIONAL PSYCHIATRIST | 12/17/15 |
|---|---|---|---|
| Print Name | Signature | Title | Date |

Distribution    Medical Record

DOC 0416 (Eff. 2/2014)



ILLINOIS DEPARTMENT OF CORRECTIONS

**Notice of Impending Psychiatric Transfer**

Danville CC
Facility

To: _Michael Parish_    ID #: _K84246_
Offender Name

As a result of your interview on _12/21/15_ with the Department physician or psychiatrist, it has been
(Month, day, year)

recommended that you be transferred to _Dixon STC_ for further evaluation and treatment.
(Facility/Institution)

Prior to transfer, you have the right to appeal this decision. To do this, you must request a hearing before the Psychiatric

Review Committee Board, where two members of the institutional staff and one member not employed by the agency will review

your case. During this hearing, you will be present and, at your own expense, may have your personal psychiatrist or other

professional persons appear on your behalf to present verbal or written testimony. Furthermore, you may specify

institutional employees or other offenders whom you desire to appear at this hearing on your behalf.

Please indicate below whether or not you desire this hearing, sign your name, and return the white and yellow copies of

this form to your counselor within 24 hours. You should retain the pink copy for your own records. If you have not

requested a hearing, your proposed transfer will be reviewed in the General Office in Springfield. If you have requested a

hearing, one will be held within five working days of your returning this form. You may request an additional delay of two

working days to prepare for the hearing. To do so please specify, in the space provided below, the reason why you are

requesting this delay.

_Melanie Easton, DCC, LCPC_    _12/21/15_
Employee's Signature                                         Date

_QMHP_
Title

**Please complete the following:**

I have read the above and:

☒ I do not request a hearing regarding my proposed transfer.

☐ I request a hearing regarding my proposed transfer.

☐ I request a hearing regarding my proposed transfer and request an additional two days for preparation prior to the
hearing. I am requesting the additional preparation time for the following reasons:

_____

_____

_____

_M.____P.____        _12/21/15_
Offender Signature                                         Date

Distribution:    White copy - Counselor        Printed on Recycled Paper        DOC 0323 (Rev. 10/2008)
                 Yellow copy - Medical File
                 Pink copy - Offender

ILLINOIS DEPARTMENT OF OFFENDER
**Offender Health Status Transfer Summary**

Offender Information: _Michael_ MI ___ ID#: _K84246_
First Name

_Parish_
Last Name

**Transferring Facility:**
_Danville_ Center

Date: _12_ , _21_ , _15_ Time: ___ ☐ a.m. ☐ p.m. ☐ HIV Test & Counseling Offered (only transfers to ATC, parole, release or discharge)

Food Handler Approved: _yes_ PPD _2-8-15 2mm_

**Transfer Screening** (completed by transferring facility health care staff):
Allergies: _IKBA error, Motrin_

Current / Acute Conditions / Problems: _∅_

Chronic Conditions / Problems: _ANXIETY D/O_

Current Medications (name, dosage, frequency, and duration):
Acute Short-term: _∅_
Chronic Long-term: _Eval skin integrity Q shift_
Chronic Psychotropic: _Remeron 15mg po QHS_

Current Treatments: _Currently on 30 min watch_

Therapeutic Diets: _Reg_

Follow-Up Care: _RHCM_

Chronic Clinics: _∅_

Specialty Referrals: _∅_

Significant Medical History: _Chronic cutter, Anxiety D/o, Depression, ® shoulder & Knee OA_

Physical Disabilities / Limitations: _∅_
☒ Glasses ☐ Dentures ☐ Hearing Aid

Assistive Devices / Prosthetics: _glasses_ Substance Abuse: ☐ Alcohol ☐ Drugs

Mental Health Issues: ☐ Hx Suicide Attempt: Date: ___ ☐ Hx Psych Med ☐ Hx MPC / STC ☐ Packet Complete

**R & C Use Only:** ☐ LAB ☐ EKG ☐ CXR ☐ Dental ☐ MEDS ☐ MH ☐ Other: ___

_Bonnie Zook SA II_                    _Bonnie Zook_                    _12/21/15_
Print Name and Title                    Signature                    Date

**Reception Screening** (completed by receiving facility health care staff):
Date: _12_ , _22_ , _15_ Time: _1600_ ☐ a.m. ☐ p.m.

Facility: _Dixon CC_

Current Complaint: _Allergies: Ibuprofen_
Subjective: ___
∅ chronic illnesses

Current Medications/Treatment: _Current c/o ® shoulder pain, smoking Hx, ¾ pack/day 10yrs, Tattoos - 1 - Back ® ↓ ® arm_

Objective:
Physical Appearance/Behavior: _1 - ↓ ® arm, 1 - ↓ ® arm 1 - ® ® arm, 1 - forehead, ∅ GSW 1 - SW behind ® ear, ® stomach 1 - SW behind ® ear, ® stomach_
Deformities: Acute/Chronic: _Broken bones - ® oldest ® hand_

T _96.4_ P: _75_ R: _16_ B/P: _122/84_

Assessment: _Operations - Hernia 1998, ∅ Hep A B C Hx_ _∅ rash/open areas, ∅ Hx Lice/ ® TVDA Hx, ∅ rash/open areas, ∅ sig. scarring crabs/scabies, ∅ sig scarring Vision - Fair - wears glasses Teeth - Fair - Brushes 2x day_

Plan: Disposition:                    ☐ Emergency Referral: ___
☐ Health Information Given
☐ Sick Call: Urgent / Routine          ☐ Therapeutic Diet      ☐ Special Housing   ☐ Chronic Clinics
☐ Medication Evaluation                ☐ Specialty Referrals   ☐ Other (specify): ___
☐ Work / Program Limitation
☐ Infirmary Placement:
☐ Other (specify): ___

_T. Woolford RN/CNT_              _Woolford RN/CNT_              _12_ , _22_ , _15_
Printed Name and Title              Signature                    Date

**For Adult Transition Center transfers only:**
I understand that medical and dental care are my responsibility while housed in a transition center. I also understand that if I am in need of health care and I cannot afford to pay for it, I may be transferred back into a facility within the Department that can provide my medical, mental health, or dental needs.

___                    ___
Offenders Signature    ☐ a.m. ☐ p.m.
                       Date          Time

DOC 0090 (Rev 11/2012)

ILLINOIS DEPARTMENT OF CORRECTIONS

MENTAL HEALTH PROGRESS NOTE

*Exhibit C*

Offender Name: Parish, Michael
Last, First, MI   ID#: _____   DOB: 2/4/83

S = subjective, offender self-report of presenting problem; O = objective, clinician view of presenting problem; A = assessment, clinician assessment of offender; P = plan, current plan, link to treatment plan

Session Date/Time: 12/3/15   10:0 AM   Session Duration: 35 min

| Appearance: | ☐ Appropriate ☒ Inappropriate | Concentration: | ☐ Appropriate ☒ Inappropriate |
| Behavior: | ☐ Appropriate ☒ Inappropriate | Memory: | ☐ Appropriate ☒ Inappropriate |
| Mood: | ☐ Appropriate ☒ Inappropriate | Speech: | ☐ Appropriate ☒ Inappropriate |
| Affect: | ☐ Appropriate ☒ Inappropriate | Thoughts: | ☐ Appropriate ☒ Inappropriate |

Subjective, Objective, Assessment

IM was a code 3 for cutting himself. IM reports that he attempted to use the coping skills we discussed yesterday and follow his plan. but there were a number of things that increased his anxiety. IM states that when he awoke this morning he found out he is not going to be able to go back to class under any circumstances and that he was being moved to cell with an inmate he could not cell with due to that inmates behaviors and his own anxiety. IM chose not to ask for a crisis member because he knew it would not bring the relief he desired. IM stated the only thing that was going to work was cutting, so he did.

O: Inmate did not make eye

Plan:

contact. was tangential in speech and thoughts. IM appeared defensive and angry. IM was unwilling to accept responsibility for his choices. IM was not responsive to therapeutic intervention or feedback.

A:

P. inmate placed in crisis on a 10 min. watch
Flu 24 hours

E. attempted brief therapeutic support and feedback with no success
attempted to review positive coping skills

Clinician Name (Print): J Carlson NCCLPC   Signature: ___ NCC LPC
Facility: Danville CC   Title: QMHP

Distribution:   Offender Medical File

Printed on Recycled Paper

DOC 0282 (Rev. 6/2012)

ILLINOIS DEPARTMENT OF CORRECTIONS

*Exhibit* ~~aaaa~~

MENTAL HEALTH PROGRESS NOTE

| Offender Name: Parish, Michael | ID#: K84246 | DOB: 2/4/1983 |
|---|---|---|
| Last, First, MI | | |

**S = subjective, offender self-report of presenting problem; O = objective, clinician view of presenting problem; A = assessment, clinician assessment of offender; P = plan, current plan, link to treatment plan**

Session Date/Time: 12/4/2015 12:35 PM     Session Duration: 55 minutes

| Appearance: | ☒ Appropriate | ☐ Inappropriate | Concentration: | ☒ Appropriate | ☐ Inappropriate |
|---|---|---|---|---|---|
| Behavior: | ☒ Appropriate | ☐ Inappropriate | Memory: | ☒ Appropriate | ☐ Inappropriate |
| Mood: | ☒ Appropriate | ☐ Inappropriate | Speech: | ☒ Appropriate | ☐ Inappropriate |
| Affect: | ☒ Appropriate | ☐ Inappropriate | Thoughts: | ☒ Appropriate | ☐ Inappropriate |

**Subjective, Objective, Assessment**

I/M seen on Continuous watch.

S: I/M discussed the events that led to his continuous watch. Discussed his frustrations about moving cell to cell, getting a new young cellmate, and about no longer being in vocational school, losing his contract for good time. States that he lost trust in what the warden said because he was told that he would go back to school, but the next day was taken out of school. Indicates he did not feel like anything (coping skills, safety plan) would have helped besides cutting himself. Med compliant. States that he is in pain from sleeping on the floor due to fractures he has had in the past. Eating meals and getting some rest.

O: I/M was calm and cooperative. Awake, alert, oriented. Eye contact is good. Speech is logical and coherent. I/M struggled to maintain focus on internal control and coping skills versus external stressors. Insight and judgment poor. Does not appear to be responding to internal stimuli. No VH/AH. Denies SI/HI.

A: Level of Care: Crisis

Anxiety D/O NOS; Depressive D/O NOS

**Plan**

- Positive coping skills

- Continue Continuous watch

- F/U 24 hours

-Continue med compliance

Brief therapeutic support and feedback.

Reviewed positive coping skills

Reviewed access to mental health services and crisis team availability.

| Clinician Name (Print): Melanie Easton, NCC, LCPC | Signature: M Easton, NCC, LCPC |
|---|---|
| Facility: Danville Correctional Center | Title: QMHP |

ILLINOIS DEPARTMENT OF CORRECTIONS

MENTAL HEALTH PROGRESS NOTE

*Exhibit* 

| Offender Name: **Parish, Micheal** | ID#: **K84246** | DOB: ~~9/20~~ 2/4/83 |
|---|---|---|
| Last, First, MI | | |

**S = subjective, offender self-report of presenting problem; O = objective, clinician view of presenting problem; A = assessment, clinician assessment of offender; P = plan, current plan, link to treatment plan**

| Session Date/Time: 12/18/2015 3:00 PM | | Session Duration: **15 min** | |
|---|---|---|---|
| **Appearance:** ☒ Appropriate ☐ Inappropriate | | **Concentration:** ☒ Appropriate ☐ Inappropriate | |
| **Behavior:** ☒ Appropriate ☐ Inappropriate | | **Memory:** ☒ Appropriate ☐ Inappropriate | |
| **Mood:** ☒ Appropriate ☐ Inappropriate | | **Speech:** ☒ Appropriate ☐ Inappropriate | |
| **Affect:** ☒ Appropriate ☐ Inappropriate | | **Thoughts:** ☒ Appropriate ☐ Inappropriate | |

| Subjective, Objective, Assessment | Plan |
|---|---|
| Met with PT on 10 min Crisi watch. | -15 min watch per Dr Tweedy |
| PT stated "cool with the whole process" and " understand what | -Continue medication plan prescribed by Dr McCormick per |
| happened and why" Pt stated that he was initially shocked to | Dr. McCormick |
| discover he was being put on watch which is why he acted out | F/U 1 day |
| so strongly. Pt states that today he is okay with it and it makes | |
| sense. Pt then went into his tangential ramblings about staff | Level of Care: Crisis |
| and cellie and all the people who cause his anxiety to be worse, | DX: Anxiety D/O |
| "they just playin' games" PT stated that he did not mean what | |
| he said in MH's office that "because the CO got him so riled up | Brief theraputic support and feedback |
| he was rambling so fast hed didn't even know what was coming | reviewed positive coping skills |
| out of his mouth" Pt was on hunger strike while MH was | |
| meeting with him. When asked why he was on a hunger strike | |
| the PT respond" going through something and nobody listening | |
| trying to get his voice heard" PT reports no current S/I or H/I | |
| | |
| MH's observation of PT was that he had calmed done, that he | |
| was genuinely accepting of his current situation. MH observed | |
| no anger and found the PT to be very cooperative. MH | |
| informed PT that based on what he was saying and how he was | |
| acting he could be moved to a 15 min watch but not while he | |
| was on a hunger strike. PT responded "AH. why ya gor be like | |
| that" Pt eventually gave up hunger strike in favor of 15 min | |
| watch. MH obseerved PT eat food. MH was granted | |
| permission by DR Tweedy to move PT to a 15 min watch after | |
| advising her of the situation and the PT's current behavior. | |
| MH then observed PT pacing indicating some anxiousness. | |

| Clinician Name (Print): Jeanne Coulson, NCC, LPC | Signature: _NCC LPC_ |
|---|---|
| | Title: QMPH |
| Facility: Danville CC | |

Distribution: Offender Medical File

*Printed on Recycled Paper*

DOC 0282 (Rev. 6/2012)

ILLINOIS DEPARTMENT OF CORRECTIONS

*Exhibit*

## MENTAL HEALTH PROGRESS NOTE

| Offender Name: Parish, Michael | ID#: K84246 | DOB: 02/04/1983 |
|---|---|---|
| Last, First, MI | | |

S = subjective, offender self-report of presenting problem; O = objective, clinician view of presenting problem; A = assessment, clinician assessment of offender; P = plan, current plan, link to treatment plan

Session Date/Time: 4/28/16 2:00 PM        Session Duration: 15 min.

| | | | | | |
|---|---|---|---|---|---|
| Appearance: | ☒ Appropriate | ☐ Inappropriate | Concentration: | ☒ Appropriate | ☐ Inappropriate |
| Behavior: | ☒ Appropriate | ☐ Inappropriate | Memory: | ☒ Appropriate | ☐ Inappropriate |
| Mood: | ☒ Appropriate | ☐ Inappropriate | Speech: | ☒ Appropriate | ☐ Inappropriate |
| Affect: | ☒ Appropriate | ☐ Inappropriate | Thoughts: | ☒ Appropriate | ☐ Inappropriate |

Subjective, Objective, Assessment

S: This R/E met with I/M Parish and addressed his offender request during treatment team. His request stated that he would like to speak to the psychiatrist and inquired about his evaluation for single-cell status designation.

O: Oriented x 4. Mood euthymic, affect congruent. Thought process rational, goal-oriented. Content relevant, coherent. Judgement and insight good. No endorsement of H/I, S/I or psychotic symptoms.

A: Major depressive disorder recurrent; stable

LEVEL OF CARE: RTU

Plan

P: Psychiatric appointment scheduled. PREA assistant coordinator consulted with regard to Vulnerable status assessment.

| Clinician Name (Print): Randy Block LPC CADC | Signature: |
|---|---|
| Facility: Dixon Correctional Center | Title: QMHP |

ILLINOIS DEPARTMENT OF CORRECTIONS

## MENTAL HEALTH PROGRESS NOTE

| Offender Name: Parish, Michael | ID#: K84246 | DOB: 02/04/1983 |
|---|---|---|
| Last, First, MI | | |

S = subjective, offender self-report of presenting problem; O = objective, clinician view of presenting problem; A = assessment, clinician assessment of offender; P = plan, current plan, link to treatment plan

**Session Date/Time:** 5/9/16 10:30 AM

**Session Duration:** 15 min.

| | | |
|---|---|---|
| Appearance: | ☒ Appropriate | ☐ Inappropriate |
| Behavior: | ☒ Appropriate | ☐ Inappropriate |
| Mood: | ☒ Appropriate | ☐ Inappropriate |
| Affect: | ☒ Appropriate | ☐ Inappropriate |

| | | |
|---|---|---|
| Concentration: | ☒ Appropriate | ☐ Inappropriate |
| Memory: | ☒ Appropriate | ☐ Inappropriate |
| Speech: | ☒ Appropriate | ☐ Inappropriate |
| Thoughts: | ☒ Appropriate | ☐ Inappropriate |

Subjective, Objective, Assessment

S: This R/E met with I/M Parish at his request following structured group. This individual states that his circumstances warrant a designation of single-cell status. "The psychiatrist stated in his notes that I have PTSD and should be single-celled. I was sexually assaulted in Cook County when I was 19. I recognize when cellies are trying to groom me to take advantage of me. That's never gonna happen again, I will kill them. I want that statement on the record in your notes in case anything happens."

O: Oriented x 4. Mood euthymic, affect congruent. Thought process rational, goal-oriented. Content relevant, coherent. Judgement and insight good. No endorsement of H/I, S/I or psychotic symptoms.

A: PTSD; stable

LEVEL OF CARE: RTU

Plan

P: Wexford management informed of celling concerns and stated threats. I/M will continue participation in structured group for three hours weekly, participate in appropriate psychoeducational groups. Inmate informed of process to obtain crisis team member if needed.

| Clinician Name (Print): Randy Block LPC CADC | Signature: |
|---|---|
| Facility: Dixon Correctional Center | Title: QMHP |

Distribution: Offender Medical File

Printed on Recycled Paper

DOC 0284 (Rev. 6/2012)

*Exhibit F*

## DECLARATION

I have know Mr.Parish for 9 years now. I was in the Cook County Jail the year he was assaulted by Tyrone Owens in divison 10˜(2008).

Mr.Parish and I became cellies in November I believe of 2016. And during my stay as Mr.Parish's cellie, he often cut himself when his anxieties got the of him. He told me that he usually cut himself to find a release from the stress, flash backs, and nigthmares from being assaulted.

Mr.Parish often wrote grivances and letters to the administration regarding being placed on single cell status, but he has never received any accommodations while we were cellies.

Mr.Parish was very territorial in the cell and it often created problems, but because of my knowledge of why he acted the way that he did, I worked with him even though it was challenging.

Mr.Parish often trying to get a single cell, but he was told that it wasn't going to happen. In H.U.66, where we were housed, there are 4 single cells, but they were occupied by people that had jobs, that were jailhouse snitches, or seniority.

Pursuant to 28 U.S.C. para. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: 3/10/17
Name: James Lewis #B-52327
Address: 2600 N.Brinton Ave, Dixon, IL 61021
Signature:

*Exhibit "G"*

## DECLARATION

I saw Mr.Parish about a week ago and he wanted me to write a factual statement regarding my observations, thoughts, and experiences as his cellmate.

When I was Mr.Parish's cellie during the summer of last year, between the months of July-August 2016. Mr.Parish use to cut himself with sharp objects. We didn't speak to each other much, nor did we use to interact in other ways. Mr.Parish was very seclusive and paranoid--he thought that his cellmates were out to get him--including me, I guess.

After several weeks of dealing with his odd behavior I asked Lt. Armour to move me to another cell.


Pursuant to 28 U.S.C. para. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: 3/7/17
Name: George White # *B-68353*
Address: 2600 N. Brinton Avenue, Dixon, IL 61021
Signature: *George white #B-68353*

Exhibit H

## DECLARATION

My old cellie Michael Parish, asked if I would give him a declaration regarding when we were cellmates today. He wanted me to discuss my experiences as his cellie.

Me and Parish were cellies on 3 different occasions. Parish knows my family members, so I thought that us becoming cellies would work out.

On a few occasions, things almost turned violent. Parish was very aggressive and paranoid when we were cellies, and after the third time we were cellies I asked to be moved, never to return.

Since I've know Parish I think --including me--that 3 maybe 4 cellmates of his has asked to be moved.

Me and parish are still cool, just not as cellies--I can't deal with feeling threaten.

Pursuant to 28 U.S.C para. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: 3/4/17
Name: Darnell Thomas #B45726
Address: 2600 N.Brinton Avenue; Dixon, IL 61021
Signature: