IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Micheal Parish, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| -vs- | ) | No. 17-cv-50097 |
| | ) | |
| John Varga, in his official capacity | ) | *(Judge Kapala)* |
| as Warden of the Dixon | ) | |
| Correctional Center, Dr. Jamie | ) | |
| Chess, and Robert Armour, | ) | |
| | ) | |
| *Defendants*. | ) | |

**AMENDED COMPLAINT**

Pursuant to leave of Court, plaintiff files this amended complaint and, by counsel, alleges as follows:

1. This is a civil action arising under Section 202 of the Americans with Disabilities Act, 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), and 42 U.S.C. § 1983. The jurisdiction of this Court is conferred by 28 U.S.C. § 12133, 29 U.S.C. § 794a(a)(2), and 28 U.S.C. § 1343.

2. Plaintiff Michael Parish is a resident of the Northern District of Illinois.

3. Defendant John Varga is the Warden of the Dixon Correctional Center. Plaintiff sues Varga in his official capacity to assert claims for in-

junctive relief and monetary damages under the ADA and the Rehabilitation Act; plaintiff asserts a claim for injunctive relief only under 42 U.S.C. § 1983 against the Warden Varga.

4. Defendant Dr. Jamie Chess is the psychologist administrator at the Dixon Correctional Center. Plaintiff sues Chess in his individual capacity only.

5. Defendant Robert Armour was at all relevant times a correctional lieutenant employed at the Dixon Correctional Center. Plaintiff sues Armour in his individual capacity only.

6. Plaintiff is confined in the Illinois Department of Corrections; plaintiff entered the IDOC on June 25, 2010 and expects to be released on May 28, 2020.

7. Plaintiff suffers from serious mental health maladies. Records maintained by or on behalf of the IDOC show that plaintiff suffers from PTSD and interpersonal disorder, is a chronic self-mutilator who experiences severe anxiety and depression as well as suicidal and homicidal ideations.

8. Physicians working at the IDOC have diagnosed plaintiff as suffering from PTSD and interpersonal disorder.

9. In 2015, officials at IDOC concluded that plaintiff's psychological disabilities could not be accommodated at the Danville Correctional Center, where plaintiff was then confined.

10. On December 22, 2015, the IDOC transferred plaintiff to the Dixon Correctional Center in an attempt to accommodate plaintiff's psychological disabilities.

11. Plaintiff was assessed upon his arrival at Dixon by Dr. Margnaz, a psychiatrist; Dr. Margnaz concluded that plaintiff's psychological disabilities required that he be assigned to a one-person cell.

12. Defendant Armour while aware of plaintiff's disabilities, overruled Dr. Margnaz and directed that plaintiff be assigned to a two-person cell.

13. Thereafter, plaintiff spoke with defendant Armour about his assignment to a two-person cell; Armour told plaintiff that he would not assign plaintiff to a one-person cell until plaintiff demonstrated to Armour's satisfaction that he required a single cell.

14. Armour specifically told plaintiff that he would get a single cell only after he inflicted great bodily harm on a cellmate.

15. Plaintiff also communicated with Dr. Chess about Armour's refusal to comply with the medical directive to assign plaintiff to a one-person cell.

16. Dr. Chess ignored plaintiff's complaints.

17. Plaintiff filed several grievances about Armour's refusal to assign plaintiff to a one-person cell and about his need to be placed in a one-person cell, pointing out that he had a history of self-harm.

18. Armour directed that plaintiff be placed into administrative segregation because plaintiff filed the above referred grievances.

19. The Department of Corrections responded to the grievances by threatening plaintiff with discipline because of his mental disability.

20. On May 9, 2016, plaintiff informed a mental health professional at the Dixon prison that he was fearful of being sexually assaulted and believed that he would kill any cellmate who attempted to harm or molest him.

21. Because of the failure of the prison to accommodate his mental disability, plaintiff engaged in six or more acts of self-mutilation or self-harm between April 21, 2017 and July 30, 2017.

22. One episode of self-harm, on July 2, 2017, involved swallowing a toenail clipper; this required an emergency evacuation to a hospital to extract the clipper.

23. The Dixon Correctional Center has more than 100 single cells for persons like plaintiff who, because of mental disabilities, require placement in a single cell. The prison does not use these cells to accommodate persons, like plaintiff, who require single cell, but use those cells to reward prisoners who inform on other prisoners.

24. As a result of the foregoing, plaintiff has been deprived of rights secured by the ADA and the Rehabilitation Act, incurred physical harm and experienced severe emotional distress.

25. Plaintiff hereby demands trial by jury.

WHEREFORE plaintiff requests that appropriate compensatory damages be awarded against defendants, that the Court grant such injunctive relief as may be appropriate, and that the costs of this action, including fees and costs, be taxed against defendants.

/s/ Kenneth N. Flaxman
Kenneth N. Flaxman
ARDC No. 08830399
Joel A. Flaxman
200 South Michigan Ave Ste 201
Chicago, Illinois 60604
(312) 427-3200
*Attorneys for Plaintiff*